# EXHIBIT "A"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**SEPTEMBER 2016**

E-Filing Number: 1609015783

**000543**

| | |
|---|---|
| **PLAINTIFF'S NAME**<br>GEORGE BOSKIE | **DEFENDANT'S NAME**<br>BACKGROUNDCHECKS.COM |
| **PLAINTIFF'S ADDRESS**<br>6532 TORRESDALE AVENUE APT. C<br>PHILADELPHIA PA 19135 | **DEFENDANT'S ADDRESS**<br>12770 COIT ROAD SUITE 1150<br>DALLAS TX 75251 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal<br>[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[ ] Jury<br>[ ] Non-Jury<br>[X] Other:  CLASS ACTION | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

**CASE TYPE AND CODE**

C1 - CLASS ACTION

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CAPTION AND DOCKET NUMBER) | **FILED**<br>**PRO PROTHY**<br>SEP **08** 2016<br>**M. BRYANT** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES          NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: GEORGE BOSKIE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>RYAN A. HANCOCK | ADDRESS<br>WILLIG, WILLIAMS & DAVIDSON<br>1845 WALNUT STREET, 24TH FLOOR<br>PHILADELPHIA PA 19103 |
|---|---|
| PHONE NUMBER<br>(215)656-3679 | FAX NUMBER<br>(215)561-5135 | |
| SUPREME COURT IDENTIFICATION NO.<br>92590 | E-MAIL ADDRESS<br>rhancock@wwdlaw.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*RYAN HANCOCK* | DATE SUBMITTED<br>Thursday, September 08, 2016, 04:34 pm |

Ryan Allen Hancock, PA Bar No. 92590
Bruce M. Ludwig, PA Bar No. 23251
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: 215-656-3679
Facsimile: 215-561-5135
rhancock@wwdlaw.com



Filed and Attested by the
Office of Judicial Records
08 SEP 2016 04:34 pm
M. BRYANT

*Attorneys for Plaintiff and Proposed Class Members*

| | |
|---|---|
| GEORGE BOSKIE, | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| Plaintiff, | |
| v. | SEPTEMBER TERM, 2016 |
| BACKGROUNDCHECKS.COM | No:_____ |
| Defendant. | |

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-1701

**AVISO**

"Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notification. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defenses o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demandaen contra suya sin previo aviso o notificacion. Ademas, la corte puede decidira favor del demandante y require que usted cumplacon todas las provisiones de esta demanda. Usted puede perder dinero o sus propriedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATA-MENTE SI NO TIENEABOGADO O SI NO TIENE EL DINERO SUFFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONOA LA OFFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASSOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107, (215) 238-1701

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| GEORGE BOSKIE | : | SEPTEMBER TERM, 2016 |
| | : | |
| Plaintiff, | : | NO. _____ |
| | : | |
| v. | : | CLASS ACTION |
| | : | |
| BACKGROUNDCHECKS.COM | : | JURY TRIAL DEMANDED |
| (in its own name and trading as | : | |
| e-backgroundchecks.com) | : | |
| | : | |
| Defendant. | : | |

George Boskie ("Boskie" or "Plaintiff"), on behalf of himself and the Classes set forth below, and in the public interest, brings this Class Action Complaint against backgroundchecks.com ( "Defendant"), and alleges as follows:

**<u>INTRODUCTION</u>**

1.     This is a case about Defendant willfully violating the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2.     Specifically, Defendant has failed to abide by the FCRA's explicit prohibition on including adverse information that is older than seven years in their consumer reports.

3.     Defendant also published a report containing duplicative and misleading information, in violation of the FCRA's mandate that consumer reporting agencies prepare their reports in a way so as to ensure maximum possible accuracy.

4.     The FCRA was enacted based on Congress's finding that there is a "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

2

5.     Based on that finding, the FCRA imposes certain obligations on consumer reporting agencies which are designed to prevent consumer reporting agencies from including incomplete, inaccurate, or old or outdated information in consumer reports.  *See* 15 U.S.C. § 1681c(a)(5) (prohibiting inclusion of "any other adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years"); 15 U.S.C. § 1681e(b) (requiring consumer reporting agencies to "follow reasonable procedures to ensure maximum possible accuracy").

6.     For public records that are used for employment purposes and which could have an adverse effect on a consumer's ability to obtain employment, the FCRA has an additional protection.  Pursuant to § 1681k, the consumer reporting agency must either send notice to the consumer at the time the information is reported to the user, or the agency must maintain "strict procedures" designed to ensure that the public record information reported is complete and up to date.

7.     Despite backgroundchecks.com's long history of operating as a consumer reporting agency, and the fact that Defendant is well aware of their legal obligations under both federal and state law, Defendant places its business interests ahead of the legal rights of the consumers about whom it issues reports.

8.     Defendant willfully disregards consumers' rights pursuant to the FCRA, choosing instead to report obsolete and duplicative information.  Defendant does not maintain strict procedures to ensure the information it reports is complete or up to date, nor does it send the contemporaneous notices required by §1681k.

Case ID: 160900543

9.    *First*, Defendant violates the FCRA by including adverse information older than seven years in its reports.    Defendant reports records of arrest, indictment, or other non-convictions of crimes which predate the consumer report by more than seven years.

10.    *Second*, Defendant fails to maintain reasonable procedures to ensure the maximum possible accuracy of the information included in its reports.    Specifically, Defendant reports the same items of criminal information multiple times in the same report, making it appear as though the subject of the report has had more criminal charges than they have in fact had.

11.    Duplicative reporting is a well-established FCRA violation.    The FTC has prosecuted consumer reporting agencies under the FCRA for failing "to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in the same report." *See* Exhibit 1.    The FTC's efforts in this regard were well publicized and led to the FTC's then second largest settlement ever with a consumer reporting agency. *See* Exhibit 2.

12.    *Third,* Defendant fails to maintain strict procedures to ensure the information it reports is complete and up to date.    Defendant's report neglects to include basic information about some of the charges it reports, such as whether they are felonies or misdemeanors, and also includes obsolete information about the status of the disposition of the charges, including contradictory disposition information in its reports.    Further, Defendant fails to include the "Offense Tracking Number" ("OTN") for each of the entries that it reports. In Pennsylvania, an OTN is a unique number assigned by the court to a particular arrest at the time of arraignment in order to enable easy tracking of an individual through the criminal justice system.    Yet, Defendant systematically fails to include an OTN and offense levels for each entry in its reports.

13.    Each of the above outlined practices benefits Defendant.

4

Case ID: 160900543

14.    Including inaccurate, old, incomplete and duplicative information in consumer reports allows Defendant to avoid the costs associated with verifying or culling information in its reports.  It also allows Defendant to produce voluminous reports to their customers, thereby creating the illusion that Defendant has unearthed a wealth of information and provided their customers with something of value.  By being over-inclusive, Defendant also avoids the risk that a customer will be displeased because the customer subsequently learns that the information Defendant provided was not fully comprehensive.

15.    Defendant's failure to comply with the FCRA was routine and systematic.

16.    Accordingly, Plaintiff asserts claims on behalf of proposed Classes defined below, and seeks statutory damages, punitive damages, attorneys' fees, costs and all other relief available under the FCRA.

17.    Plaintiffs in this action seek in excess of $50,000.00 in monetary damages, and hence the amount in dispute exceeds the amount requiring arbitration pursuant to local rule.

## THE PARTIES

18.    Plaintiff George Boskie is a resident of Philadelphia, Pennsylvania and has resided in Philadelphia at all times since April 2015.

19.    Defendant Backgroundchecks.com, Inc. ("Backgroundchecks.com") is a consumer reporting agency which provides background and employment screening services, risk-management services and products, information management products and services, and decisions-making intelligence.  Defendant regularly conducts business in Philadelphia County, including by providing consumer reports to employers seeking to evaluate potential employees in Philadelphia County, such as Plaintiff. Defendant's principal place of business is at 12770 Coit Road, Suite 1150, Dallas TX, 75251.

5

Case ID: 160900543

20.     Backgroundchecks.com is a consumer reporting agency as defined in the FCRA, as defined by 15 U.S.C. § 1681a(f), because it regularly engages wholly or partly in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties for monetary fees.

21.     Backgroundchecks.com uses interstate means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports.

22.     Backgroundchecks.com has been engaged in the provision of consumer reports since at least 1999.  According to its website, it maintains a database containing 550 million criminal records and more than 13 million photos.  *See http://www.backgroundchecks.com /aboutus* (last visited September 8, 2016) (attached hereto as Exhibit 3).

### JURISDICTION AND VENUE

23.     This Court has jurisdiction over Plaintiff's claims based on concurrent jurisdiction under 15 U.S.C. § 1681p.

24.     The Courts of Common Pleas of this Commonwealth are endowed with full authority as provided by law, which extends to causes of action arising under federal law. 42 Pa. C.S.A. § 931.

25.     The Court has personal jurisdiction over Defendant.

26.     Venue in this Court is proper under Pennsylvania Rules of Civil Procedure 1006 and 2179 because Defendant regularly conducts business in Philadelphia County.

### STATUTORY BACKGROUND

27.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite

6

their importance, consumer reports were unregulated and had widespread errors and inaccuracies. Despite the structure put in place by the FCRA, serious problems persist: by some measures, there are material errors in twenty-six percent of consumers' reports.[1]

28.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

29.    Congress passed the prohibitions on including obsolete information in reports in order to preserve consumers' privacy. According to the federal government, "Section 1681c's restrictions on disclosing older adverse information serve the governmental interest in protecting individuals' privacy."[2] "By limiting the disclosure of potentially embarrassing, harmful, and irrelevant information, the provision necessarily and automatically protects individuals' interests in keeping that information private." *Id.* at 11. Even though many records which find their way into background reports are public, gathering and compiling older records requires significant effort. By preventing their dissemination, the FCRA protects consumers' interests "in maintaining the [records'] 'practical obscurity.'" *See King v. Gen. Info. Servs., Inc.*, 903 F. Supp. 2d 303, 311-12 (E.D. Pa. 2012). In the context of outdated non-conviction information, one of the FCRA's sponsors pointed out the harm that can be done by indefinitely reporting old adverse information: "One of the common irrelevancies perpetuated by credit reporting agencies is furnishing information on minor offenses committed many years ago." 115 Cong. Rec. 2412

---

[1]    U.S. Federal Trade Commission, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003* (December 2012), available at www.ftc.gov/os/2013/02/130211factareport.pdf (last accessed August 30, 2016).
[2] Mem. of the U.S. in Supp. of the Constitutionality of §1681c of the FCRA, *King v. Gen. Info. Servs., Inc.*, No. 2:10-cv-6850, ECF No. 52 at 10 (E.D. Pa. May 3, 2012).

Case ID: 160900543

(1969) (Statement of bill sponsor Sen. Proxmire). The restriction of access to information, even information that is otherwise publicly available, has been recognized by the Supreme Court as implicating privacy concerns and as being grounded in common law. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989).[3]

30.    Numerous academics have also noted that the FCRA enshrines privacy by recognizing the link between protecting individual privacy and forbidding the disclosure of old information. *See* Steven C. Bennett, The "Right to Be Forgotten": Reconciling EU and US Perspectives, 30 Berkeley J. Int'l L. 161, 167 (2012) (citing the FCRA's bar out reporting outdated information as an example of "'data minimization' (a form of the right to be forgotten)" which "has long been a central element of 'fair information practices'"); Meg Leta Ambrose, It's About Time: Privacy, Information Life Cycles, and the Right to Be Forgotten, 16 Stan. Tech. L. Rev. 369, 378–79 (2013) ("the Fair Credit Reporting Act generally disallows the use of information older than seven years that may cast the consumer in negative or unfavorable light...the hope is that the information no longer represents the individual and would limit her opportunities if it were attached to her name as she moves through life"). As one legislator explained, the FCRA's protections represented "new safeguards to protect the privacy of

---

[3] In this case, the Court considered whether "rap sheets" were private within the meaning of the Freedom of Information Act. The Court rejected the idea that privacy interests implicated in the disclosure of otherwise public records were minimal, noting that even at common law such information was viewed as implicating privacy concerns, particularly where the information was old. The Court noted "the extent of the protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact and the extent to which the passage of time rendered it private." *Id.* at 764. The Court continued, noting that there is a "vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information." *Id.* As the Court pointed out, the fact that "funds have been spent to prepare, index, and maintain these criminal-history files demonstrates that the individual items of information in the summaries would not otherwise be 'freely available' either to the officials who have access to the underlying files or to the general public." *Id.*

8

Case ID: 160900543

employees and job applicants;" the Act as a whole, he continued, was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections").

31.     In addition to being concerned about privacy, Congress was also concerned about inaccuracies in consumer reports.  Accordingly, Congress required consumer reporting agencies to follow "reasonable procedures to ensure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

32.     In an effort to ensure that employment reports containing public records information were accurate, and to enable consumers to protect themselves from inaccuracies stemming from reports containing incorrect or incomplete information derived from public records, Congress passed §1681k, which required the agencies to either maintain strict procedures to ensure the information reported was complete and up to date, or to send the consumer a contemporaneous notice.

33.     As set forth below, Defendant systematically violated the FCRA's prohibition on including old non-convictions in consumer reports, as well as the statute's requirement that consumer reporting agencies utilize reasonable procedures to ensure maximum possible accuracy.  Defendant failed to maintain strict procedures to ensure the information it reported was complete and up to date, and also did not send the required contemporaneous notice.

Case ID: 160900543

## ALLEGATIONS RELATING TO PLAINTIFF BOSKIE

34.    On or about April 4, 2015 Defendant provided the consumer report attached hereto as Exhibit 4 ("Boskie Consumer Report" or "Report") to Plaintiff's prospective employer, Homeadvisor.

35.    The Report includes obsolete information in violation of the FCRA.

36.    Specifically, the Report contains thirteen purported charges against Plaintiff between 2006 and 2011 relating to three separate incidents.

37.    *First*, the Report includes three charges arising out of a July 25, 2006 incident: (1) possession of an instrument of crime with intent; (2) intent to possess controlled substance by person not registered; and (3) possession with intent to deliver.  The disposition for these charges is "nolle prossed".  The charges arising from this incident, having been nolle prossed and having occurred more than seven years prior to the date of the Report, were prohibited from being disclosed to a potential employer by the FCRA.  *See* 15 U.S.C. § 1681c(a)(2).

38.    *Second*, the Report includes one charge arising out of an April 15, 2007 incident for intent to possess a controlled substance.  The disposition for the charge is "dismissed" with a "Disposition Date" of August 22, 2007.  The charge arising from this incident, having been dismissed and having occurred more than seven years prior to the date of the Report, was prohibited from being disclosed to a potential employer by the FCRA.  *See* 15 U.S.C. § 1681c(a)(2).

39.    *Third*, the Report includes nine charges arising out of an April 9, 2011 incident.  However, only three unique charges arose out of the April 9, 2011 incident.  Despite only three charges being filed, the Report lists each charge three times for a total of nine reported charges.  The Report lists each of the following charges three times: (1) access device issued to another

10

Case ID: 160900543

person who has not authorized its use; (2) forgery – unauthorized act in writing; and (3) identity theft. As a result of reporting the three charges three times each, the Report is misleading because it makes Plaintiff's criminal history appear far more extensive than it actually is.

40.     In addition to the duplicative charges reported, the method of reporting the duplicative charges is misleading. Specifically, each charge is reported separately, with different information including, without limitation, different dispositions, disposition dates, "Charge Sequences" or "Sequence Numbers", and Docket Numbers as follows:

a.  For the charge of access device issued to another person who has not authorized its use, the Report includes three different dispositions, three different disposition dates, two different charge sequence or sequence numbers, and two different case numbers;

b.  For the charge of forgery – unauthorized act in writing, the Report includes Report includes three different dispositions, three different disposition dates, two different charge sequence or sequence numbers, and two different case numbers; and

c.  For the charge of identity theft, the Report includes three different dispositions, three different disposition dates, and two different case numbers.

41.     Given the duplicative reporting, and Defendant's inclusion of inconsistent docket numbers, disposition dates, dispositions, and charge sequences, Defendant's Report made it appear as though Plaintiff had been charged with nine separate criminal incidents when, in reality, he was only charged with three counts in connection with a single arrest.

42.     Defendant's duplicative reporting was exacerbated by Defendant's failure to include an Offense Tracking Number ("OTN") for each of the nine entries.

Case ID: 160900543

43.    In Pennsylvania, an OTN is a unique number assigned by the court to a particular arrest at the time of arraignment in order to enable easy tracking of an individual through the criminal justice system.  Accordingly, the OTN would have shown that the duplicative charges all stemmed from a single arrest.  While one set of the three charges associated with the April 9, 2011 incident listed on the Report contained this number, none of the other charges on the Report (including the duplicative entries associated with these same charges) contained the OTN. Had Defendant searched the original public records, and included the OTN for each record, Defendant could have avoided the harm and the risk of harm associated with duplicative reporting.

44.    Subsequent to the publication of Defendant's report, all three of the charges which were duplicatively reported were expunged.  The dismissed drug charge with an offense date in 2007 was also expunged.

45.    Backgroundchecks.com's procedures with respect to the reporting of criminal convictions are unreasonable and not "strict."  The procedures ensure that reports will achieve neither maximum possible accuracy nor contain complete, up-to-date records because, among other things, backgroundchecks.com:

  a.    Failed to reasonably screen results to ensure that each charge was only reported once by failing to remove duplicative entries, even when some of those entries contained some overlapping fields (such as the same offense date and the same charges);

  b.    Failed to present information reported in an intelligible format that would allow the reader to identify duplicate entries;

  c.    Failed to routinely include OTNs;

Case ID: 160900543

    d.   Failed to obtain copies of the actual criminal records at issue, including docket sheets, from the courts of record, which would have made manifestly clear what the current public record status of each offense was and that the offenses were duplicative of one another; and

    e.   Failed to employ an algorithm or any other method to identify reports containing dismissed or other non-conviction charges for which the date of entry preceded the report by more than seven years.

### PLAINTIFF'S CONCRETE HARMS

46.    Defendant inflicted concrete harms on Plaintiff and other class members.

47.    By duplicatively and inconsistently reporting Plaintiff's criminal record, Defendant exaggerated the extent of Plaintiff's criminal history and falsely portrayed Plaintiff to his prospective employer as having a longer criminal history than existed in reality. Defendant's inaccurate and misleading reporting regarding his criminal history put Plaintiff's employment prospects at risk and damaged his reputation.

48.    By reporting information which Congress had deemed too old to report, specifically non-convictions for which the date of entry pre-dates the report by more than seven years, Defendant invaded Plaintiff's privacy. Congress made a policy determination that adverse information older than seven years, other than criminal convictions, should not be included on consumer reports. 15 U.S.C. § 1681c(a) By failing to provide Plaintiff with the "fresh start" mandated by Congress, Defendant did concrete harm to him.

49.    By failing to report the complete public record on Plaintiff, including the OTN number Defendant made it appear as though Plaintiff's criminal involvement was more extensive than it was, and made him appear less attractive to prospective employers.

Case ID: 160900543

## CLASS ACTION ALLEGATIONS

50.    Plaintiff brings Counts 1-3 as a class action pursuant to Pa. R. Civ. P. 1701-16.

51.    Plaintiff asserts Count 1 on behalf of the "Obsolete Information Class," defined as follows:

> **Obsolete Information Class:**  All persons residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report furnished to a third party by backgroundchecks.com which includes an entry for an "offense" where the date of the earlier of the "arrest date," "file date," "offense date," or "charge date," antedates the date of the report by more than seven years and where the disposition is one of those listed on Exhibit 4.  The Obsolete Information Class consists of all persons who satisfy this criterion and who were the subject of a consumer report furnished by backgroundchecks.com at any time which occurred between the date which is five years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

52.    Plaintiff asserts Count 2 on behalf of the "Duplicative Reporting Class" defined as follows:

> **Duplicative Reporting Class:**  All individuals in the United States who were the subject of a consumer report furnished by backgroundchecks.com which includes more than one non-identical notation regarding the same incident.    The Duplicative Reporting Class consists of all persons who satisfy this criterion who were the subject of a consumer report furnished by backgroundchecks.com at any time which occurred between the date which is five years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

53.    Plaintiff asserts Count 3 on behalf of the "Strict Procedures Class," defined as follows:

> **Strict Procedures Class:** All persons residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report furnished to a third party by backgroundchecks.com, that was furnished for an employment purpose, that contained at least one criminal public from Pennsylvania but which failed to include an Offense Tracking Number and to whom backgroundchecks.com did not provide contemporaneous written notice that it was furnishing the subject report

14

containing the name and address of the person that was to receive the report. The Strict Procedures Class consists of all persons who satisfy this criterion who were the subject of a consumer report furnished by backgroundchecks.com at any time which occurred between the date which is five years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

54.   Each of the proposed classes satisfies the requirements of Pa. R. Civ. P. 1702.

55.   <u>Numerosity</u>:   The Classes are so numerous that joinder of all class members is impracticable. Each of the proposed Classes consists of over 100 individuals.

56.   <u>Typicality</u>:   Plaintiff's claims are typical of the class members' claims. Defendant uses highly automated procedures to prepare consumer reports, and the flaws in their procedures which led to the violations alleged herein are systematic.

57.   <u>Adequacy</u>:   Plaintiff will fairly and adequately protect the interests of the class pursuant to Pa. R. Civ. P. 1709 because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the class.

58.   <u>Commonality</u>:   Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members, including but not limited to:

    a.   Whether defendant violated the FCRA by including information which is adverse to the consumer and antedates the report by more than seven years;

    b.   Whether defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy;

    c.   Whether defendant violated the FCRA by failing to employ strict procedures to ensure public record information is complete and up to date or to send the required contemporaneous notice;

    d.   Whether Defendant's FCRA violations were willful;

    e.   The proper measure of statutory and punitive damages; and

Case ID: 160900543

      f.   The proper form of declaratory relief.

59.    Class certification is appropriate under Rule 1708 because, *inter alia*, questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

60.    In view of the complexities of the issues and the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions.

61.    Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.  The administration of this action can be handled by class counsel or a third party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

62.    Plaintiff intends to send notice to all members of the class to the extent required by Rule 1712.  The names and addresses of the class members are available from Defendant's

16

Case ID: 160900543

records.

## ALLEGATIONS ESTABLISHING DEFENDANT'S CONDUCT WAS WILLFUL

59.    Defendant is aware of the fact that its consumer reports are inaccurate and incomplete.  Indeed, each report, including Plaintiff's Report, contains the following disclaimer:

> All criminal history information reflected should not be considered as 100% complete of [sic] an accurate history of any individual.

60.    As set forth herein, there were numerous ways that Defendant could have increased the accuracy and completeness of its criminal history reporting. Instead of complying with the obligations imposed by the FCRA to ensure the accuracy of this information, Defendant opted to use this disclaimer.

61.    That Defendant knew it was reporting inaccurate and incomplete criminal histories in its consumer reports and admitted as much in each report is evidence that its conduct was willful.

### *Reporting Obsolete information*

62.    When a consumer reporting agency furnishes a consumer report to the consumer or a third party, the agency is required to exclude adverse items of information which antedate the consumer report by more than seven years.  15 U.S.C. § 1681c(a)(5).

63.    This prohibition includes the reporting of non-conviction information that antedates the report by more than seven years, such as dismissed charges. *See* 15 U.S.C. §§ 1681c(a)(2), (a)(5); *see also Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3-*4 (N.D. Ill. July 17, 2014) (holding that the "express language of the FCRA" mandates that "a consumer reporting agency may not include any adverse item of information other than a 'record of conviction' not a 'record of dismissed charges'"); *Haley v. Talentwise, Inc.*, 9 F. Supp. 3d 1188, 1192-95 (W.D. Wash. 2014) (finding that under the "plain language" of the FCRA, a "dismissed charge from over seven years ago is both a

17

Case ID: 160900543

'record of arrest' and 'adverse' information that [a consumer reporting agency] is prohibited from including in [a] consumer report") (citing *Serrano* v. *Sterling Testing Syst.*, 557 F. Supp. 2d 688, 693 (E.D. Penn. 2008)); *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1394 (N.D. Cal. 2014) ("In light of the remedial purpose of the Act, this order now holds that only the actual convictions may be reported and stale dismissed counts must be combed out and go unreported."); Memorandum of the United States of America in Support of the Constitutionality of § 1681c of the Fair Credit Reporting Act in *Dowell v. Gen. Info. Servs, Inc.*, 13-CV-02581-L-BGS, at 17 (S.D. Cal. Feb. 20, 2014) (stating that dismissed charges, even if associated with a conviction, may not be reported under the FCRA).

61.    Notwithstanding this clear statutory directive, Defendant routinely reports obsolete, adverse non-criminal information that antedates the report by more than seven years.

62.    Defendant is well aware of the FCRA's prohibition on reporting obsolete information. Defendant has adopted such a practice despite knowing that its practices do not comply with the FCRA.

63.    It is standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become obsolete. *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). Yet, Defendant failed to implement a purge date in its systems.

64.    Defendant has been sued multiple times for failing to employ strict procedures to assure that public records information included in its reports for employment purposes is complete and up to date in violation of the FCRA, and eventually settled a class action for $18 million. *See* Settlement Agreement in *Thomas v. Backgroundchecks.com*, Case No. 3:13-cv-00029-REP, ECF No. 88-1 (E.D. Va. May 12, 2015). As part of the settlement agreement,

Case ID: 160900543

Defendant agreed to make substantial changes to ensure that reports have maximum possible accuracy and that the reported information was complete and up-to-date.  Further, Defendant settled the following individual cases, which alleged that the Defendant violated the FCRA for reporting convictions more than seven years, failing to maintain reasonable procedures, and failing to provide proper notice.  *See Jane Doe v. Backgroundscreening.com et al.*, Case No. 1:15-cv-00949-RP (W.D. Tx. 2015); *Ahmed Ali v. Backgroundscreening.com et al.* Case No. 2:13-cv-01838-RAJ (W.D. Wa. 2013); *Eric Lawrence v. Backgroundscreening.com,* Case No. 3:15-cv-00279-BSM (E.D. of Ar. 2015); *James Williams v. Backgroundscreening.com,* Case No. 1:12-cv-00190-CRN (N.D. Ill. 2012); *Doyle Elliott v. Backgroundscreening.com,* Case No. 5:11-cv-00204-R  (W.D.  Ok.  2011);  and  *James  Wesley  Carter  v. Backgroundscreening.com,* Case No. 5:15-vc-01531-MWF-JC and 5:15-cv-05728 (C.D. Ca. 2015).

65.    Defendant is an affiliate of General Information Systems ("GIS"), another consumer reporting agency.  GIS has been sued multiple times for reporting obsolete non-conviction information in violation of the FCRA, and eventually settled the two consolidated class action lawsuits for $3.4 million. *See* Settlement Agreement i n  *King v. General Information Services, Inc.*, Case No. 2:10-cv-06850-PBT, ECF No. 105-2 (E.D. Pa. June 24, 2014). As part of the settlement agreement, Defendant agreed to "modify its policies and procedures so as to not report Non-Conviction Count Information in employment-purposes consumer reports." *Id.* at 7.

64.    Despite its affiliate's specific promise to make practice changes to better comply with  § 1681c(a), Defendant still does not comply with the FCRA's prohibition on reporting  obsolete, non-conviction information.

Case ID: 160900543

65.    Defendant's practices violate a fundamental protection afforded to employees under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance.  *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano*, 557 F. Supp. 2d 688 (holding FCRA prohibits even alluding to existence of unreportable adverse information).

66.    Defendant is a founding member of the National Association of Professional Background Screeners ("NAPBS").   The NAPBS has warned its members not to report outdated non-conviction information.

### *Duplicative Reporting*

63.    The Federal Trade Commission (FTC) has sued at least one consumer reporting agency for reporting criminal incidents more than once in a report, and other consumer reporting agencies already make efforts to identify and delete duplicative reporting. *See, e.g.*, Stipulated Final Judgment in *U.S. v. Hireright Solutions, Inc*, No. 12-cv-1313, ECF No. 3 at 4 (D.D.C. Aug. 29, 2012) (stating that HireRight is enjoined from "failing to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in a single report").

64.    Numerous courts have also found duplicative reporting to be illegal.  *See, e.g.*, *Smith v. HireRight Sols., Inc.,* 711 F. Supp. 2d 426 (E.D. Pa. 2010); *Hawkins v. S2Verify LLC*, No. C 15-03502 WHA, 2016 WL 107197 (N.D. Cal. Jan. 11, 2016); *Haley v. TalentWise, Inc.*, 9 F. Supp. 3d 1188 (W.D. Wash. 2014); *Dougherty v. Quicksius, LLC*, No. CV 15-6432, 2016 WL 3757056, at *6 (E.D. Pa. July 14, 2016).

Case ID: 160900543

65.    As a founding member of NAPBS, Defendant is aware that the NAPBS has informed its members of the FTC's case against HireRight and the dangers in including multiple entries for the same charges.

66.    Defendant's consumer reports are produced in an automated fashion from electronic databases.

67.    As part of the process of assembling consumer reports, these databases utilize a variety of algorithms to ensure that information reported "matches" the consumer who is the subject of the report. (*See* Exhibit 5, http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf, at 22.)

68.    In the same way that Defendant uses algorithms to ensure that personally identifying information in a report matches the subject of the report's information, Defendant could have easily written an algorithm to ensure that all of its reports would not include duplicative entries, or to flag potentially duplicative entries for further human review.

69.    Defendant reports duplicative information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate entries.

***Incomplete and Not up to Date Reporting***

70.    Defendant was on notice that the sources of information it consulted, which did not include docket sheets, were not accurate, complete and up to date.  This is demonstrated by Defendant's inclusion of the below disclaimer on each and every one of the criminal entries on Plaintiff's report:

> **The data or information provided is based upon information received by the Administrative Office of Pennsylvania Courts ("AOPC").  AOPC makes no representation as to the accuracy, completeness or utility, for any general or specific purpose, of the information provided and as such, assumes no liability for**

Case ID: 160900543

**inaccurate or delayed data, errors or omission. Use of this information is at your own risk. AOPC makes no representations regarding the identity of any persons whose names appear in the records. User should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.**

71.     Despite being advised to personally consult the official court record, Defendant failed to do so.  Had Defendant done so, it would have realized that is records were duplicative, inaccurate, incomplete and out of date.

72.     The AOPC requires requestors of recurring bulk distribution of electronic case files to execute an "Agreement Concerning Bulk Distribution of Electronic Case Record Information on Recurring Basis" ("Agreement"). The Agreement requires the "Subscriber" to "…retrieve and access the appropriate LifeCycle file(s) created by the AOPC on a weekly basis and update their data accordingly." "Each file will contain a list of CPMS or MDJS cases that must be removed from subscriber data in order for the same to remain current and up to date." Defendant could have easily contracted with the AOPC to receive updated data on a weekly basis in order to ensure that their data remained accurate and up to date.

73.     Moreover, Defendant easily could have reported the OTN for each of its offenses and written an algorithm to identify instances of duplicative reporting.

74.     In addition to failing to implement automated procedures to avoid statutory violations, Defendant also failed to have its reports properly reviewed by an individual who was trained in criminal records and the requirements of the FCRA. Had Defendant had a properly trained individual review this report, the incomplete and not up to date nature of Defendant's report could have been easily detected.

75.     In addition to the allegations set forth above, Plaintiff sets forth below additional reasons why each specific violation was committed willfully:

Case ID: 160900543

a. The FCRA was enacted in 1970; Defendant has had over four decades to become compliant;

b. Backgroundchecks.com is a large corporation with access to legal advice through its own general counsel's office and outside counsel;

c. Defendant is a consumer reporting agency, and its primary business is the provision of consumer reports, which are strictly regulated by the FCRA, and as such, Defendant is familiar with these statutes, and with what it must do to comply with them; and

d. Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the FCRA.

### COUNT I
**Defendant Reports Obsolete Information**
**15 U.S.C. § 1681c(a)**
*Asserted on Behalf of Plaintiff and the Obsolete Information Class*

76.     Defendant has violated the FCRA by reporting records of arrests and criminal charges other than convictions of crimes that antedate the reports by more than seven years. *See* 15 U.S.C. § 1681c(a)(2).

77.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and the other Obsolete Information Class members.

78.     Plaintiff and the Obsolete Information Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

79.     Plaintiff and the Obsolete Information Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

23

Case ID: 160900543

80.     Plaintiff and the Obsolete Information Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### COUNT II
**Defendant Reports Duplicate Criminal Convictions**
**15 U.S.C. § 1681e(b)**
*Asserted on Behalf of Plaintiff and the Duplicative Reporting Class*

81.     Defendant has violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of criminal record information. *See* 15 U.S.C. § 1681e(b). This failure has led to Defendant reporting criminal charges against members of the Duplicative Reporting Class multiple times in the same report.

82.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Duplicative Reporting Class members.

83.     Plaintiff and the Duplicative Reporting Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

84.     Plaintiff and the Duplicative Reporting Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

85.     Plaintiff and the Duplicative Reporting Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### COUNT III
**Failure to Maintain Strict Procedures**
**15 U.S.C. § 1681k**
*Asserted on Behalf of Plaintiff and the Strict Procedures Class*

86.     Defendant has violated the FCRA by failing to employ strict procedures to assure that public records information included in its reports for employment purposes is complete and

Case ID: 160900543

up to date.  *See* 15 U.S.C. § 1681k.  Defendant also does not send contemporaneous notice indicating it is reporting such records.

87.     This failure has led to Defendant reporting incomplete and not up to date information about consumers.

88.     The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Duplicative Reporting Class members.

89.     Plaintiff and the Duplicative Reporting Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

90.     Plaintiff and the Duplicative Reporting Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

91.     Plaintiff and the Strict Procedures Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

92.     WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

A.     Determining that this action may proceed as a class action;

B.     Designating Plaintiff as class representative and designating undersigned counsel as counsel for the Classes;

C.     Issuing proper notice to the Classes at Defendant's expense;

D.     Declaring that Defendant committed multiple, separate violations of the FCRA;

E.     Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's and the Classes' rights and their obligations under the FCRA;

25

Case ID: 160900543

F.    Awarding statutory damages and punitive damages as provided by the FCRA;

G.    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

H.    Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **JURY TRIAL**

93.    Plaintiff and the Classes hereby request a trial by jury of all issues triable by jury.

Dated:    September 8, 2016

Ryan Allen Hancock, PA Bar No. 92590
Bruce M. Ludwig, PA Bar No. 23251
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: 215-656-3679
Facsimile: 215-561-5135
rhancock@wwdlaw.com

E. Michelle Drake (pro hac vice forthcoming)
BERGER & MONTAGUE, P.C.
100 South Fifth Street
19th Floor
Minneapolis, MN 55402
Phone: 800-424-6690
Fax 215-875-4604
emdrake@bm.net

Patrick F. Madden, PA Bar No. 309991
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3035
Facsimile: 215-875-4604
pmadden@bm.net

*Attorneys for Plaintiff and Proposed Class Members*

26

## VERIFICATION

I, George Boskie, hereby state:

1.          I am the plaintiff in this action;

2.          I verify that the factual statements made in the accompanying complaint are true and correct          to the best of my knowledge and belief; and

3.          I understand that the statements in the accompanying complaint are subject to the penalties          of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: 9-2-16

George Boskie

Case ID: 160900543

# EXHIBIT 1

Filed and Attested by the
Office of Judicial Records
08 SEP 2016 04:34 pm
M. BRYANT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>Plaintiff, )<br><br>v. )<br><br>HIRERIGHT SOLUTIONS, INC. )<br><br>Defendant. ) | Civil Action No. 12-1313 |

## COMPLAINT FOR CIVIL PENALTIES,
## PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its

Complaint, alleges:

     1.     Plaintiff brings this action under sections 5(a), 13(b), and 16(a) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a); and section 621(a) of

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a), to obtain monetary civil

penalties, and injunctive or other relief from Defendant HireRight Solutions, Inc. for engaging in

violations of the FTC Act, 15 U.S.C. § 45(a), and the FCRA, 15 U.S.C. §§ 1681 – 1681x.

<u>JURISDICTION AND VENUE</u>

     2.     This Court has subject matter jurisdiction over this matter under 28 U.S.C.

§§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(a), 53(b), 56(a), and 1681s.

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1395(a), and 15 U.S.C. § 53(b).

PLAINTIFF

4.      This action is brought by the United States of America on behalf of the Federal Trade Commission.  The Commission is an independent agency of the United States government given statutory authority and responsibility by, *inter alia*, the FTC Act, *as amended*, 15 U.S.C. §§ 41-58, and the FCRA, 15 U.S.C. §§ 1681-1681x.  The Commission is charged, *inter alia*, with enforcing section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce; and the FCRA, which imposes duties upon consumer reporting agencies.

DEFENDANT

5.      Defendant HireRight Solutions, Inc. ("HireRight Solutions" or "Defendant") is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.  Defendant transacts or has transacted business in this district.

THE FAIR CREDIT REPORTING ACT

6.      The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date.  The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003.

7.      Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some

Page 2 of 11

Case ID: 160900543

other governmental agency, irrespective of whether the person is engaged in commerce or meets

any other jurisdictional tests set forth by the FTC Act.

       8.     HireRight Solutions, formerly known as USIS Commercial Services, Inc.

is now and has been a "consumer reporting agency," as defined in section 603(f) of the FCRA,

15 U.S.C.  § 1681a(f).  That section defines a consumer reporting agency as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the practice of assembling or evaluating
> consumer credit information or other information on consumers for the purpose of
> furnishing consumer reports to third parties, and which uses any means or facility
> of interstate commerce for the purpose of preparing or furnishing consumer
> reports.

HireRight Solutions regularly sells in interstate commerce information on consumers that it

assembles for the purpose of furnishing consumer reports to third parties, as described further

below.

       9.     The FCRA imposes several obligations on consumer reporting agencies,

including obligations to take reasonable steps to ensure the maximum possible accuracy of

consumer reports, to provide consumers with access to their reports, and to implement

procedures for consumers to dispute inaccurate information in their reports.  These obligations

are described in more detail below.

<u>DEFENDANT'S BUSINESS PRACTICES</u>

       10.    HireRight Solutions provides background reports to thousands of

employers throughout the United States about prospective and current employees, in order to

assist the employers in making decisions about hiring and other employment-related issues

("background screening reports").  These reports contain public record information, including

criminal histories of individuals, from multiple sources.

Page 3 of 11

Exhibit 1
Case ID: 160900543

11.     The background screening reports that HireRight Solutions provides to employers are "consumer reports" as defined in section 603(d) of the FCRA, 15 U.S.C. § 1681a(d). That section defines a "consumer report" as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604.

HireRight Solutions' reports are communicated to third parties; bear on, among other things, consumers' general reputation and personal characteristics; and are used as a factor in determining eligibility for employment.

## ACCURACY

12.     Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires all consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of consumer report information.

13.     In numerous instances, Defendant failed to follow reasonable procedures to assure maximum possible accuracy. Among other things, Defendant:

(1)     failed to follow reasonable procedures to assure that the information contained in consumer reports it furnished reflected the current public record status of consumers' information, such as expungement of a criminal record;

(2)     failed to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in the same report; and

Case ID: 160900543

     (3)      failed to follow reasonable procedures to prevent the provision of

obviously erroneous consumer report information to employers, such as

purported information on a single consumer that included records of other

consumers with different names, dates of birth, or other identifiers that are

available in the public record.

     14.     In multiple instances, these failures led to the reporting of inaccurate consumer

report information regarding prospective employees who were then denied employment or other

employment-related benefits.

ACCESS AND CORRECTION

     15.     Under the FCRA, consumer reporting agencies must allow consumers to access

their own information and dispute any inaccurate information.  In relevant part, the process is as

follows:  First, consumer reporting agencies must, upon request, clearly and accurately disclose

to a consumer who requests his or her file all information in that file at the time of the request.

15 U.S.C. § 1681g(a).  Second, within thirty days of receiving a notice that a consumer disputes

the completeness or accuracy of information in his or her file, the consumer reporting agency

must conduct a reasonable reinvestigation to determine whether the disputed information is

inaccurate and record the current status of the disputed information, or delete the information

from the file.  15 U.S.C. § 1681i(a)(1)(A).  Third, the consumer reporting agency must provide

written notice to the consumer of the results of the reinvestigation not later than five business

days after its completion.  15 U.S.C. § 1681i(a)(6).  Defendant did not comply with one or more

of these requirements.

Page 5 of 11

Exhibit 1
Case ID: 160900543

16.    In numerous instances, Defendant either failed to provide consumers with information in their files or failed to do so upon request.  Their systems for fulfilling requests for reports resulted in either delays or the non-fulfillment of the requests.  For example, HireRight Solutions, Inc. experienced numerous backlogs for fulfilling consumers' requests because of inadequate staffing or technical problems.

17.    In numerous instances, Defendant did not conduct reinvestigations of disputed items in a consumer's file upon receipt of a notice of dispute from the consumer.  Defendant required consumers who wished to dispute information in consumer reports to have a copy of the report before Defendant would initiate a reinvestigation.  For consumers who did not have their consumer report, Defendant routinely instructed them to request a copy before Defendant would initiate a reinvestigation.  This practice often delayed the reinvestigation process and made it more difficult for consumers to initiate that process.

18.    In numerous instances, Defendant closed dispute reinvestigations without providing written notice of the results of the reinvestigations to affected consumers.

SPECIAL OBLIGATIONS ON BACKGROUND SCREENERS
WHO USE PUBLIC RECORD INFORMATION

19.    The FCRA contains special requirements for consumer reporting agencies that furnish consumer reports containing public record information for employment purposes, if that information is likely to have an adverse effect upon a consumer's ability to obtain employment.  These consumer reporting agencies must either (1) notify the consumer, at the time that such information is reported, of the fact that public record information is being reported, or (2) maintain "strict procedures" designed to ensure the reported public record information is complete and up to date.   15 U.S.C. § 1681k(a).

Case ID: 160900543

20.    In numerous instances, Defendant neither (1) notified consumers, at the time the information was reported, that they reported public record information to employers, nor (2) maintained "strict procedures" to ensure that the information in the reports was complete and up to date. They had a complex, multi-step process for notifying consumers that public record information was being reported. This process was not initiated until the day that the report was electronically transmitted to the employer and typically took more than one day to complete. As a result, the notices were not mailed to consumers at the time the information was reported to employers. Moreover, as described in Paragraph 13, Defendant did not maintain "strict procedures" to ensure that reported public record information was complete and up to date.

<u>VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>

<u>COUNT I</u>

21.    As described in Paragraph 13, in multiple instances, Defendant failed to use reasonable procedures to assure maximum possible accuracy of consumer report information.

22.    By and through the acts and practices described in Paragraph 13, Defendant has violated section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

23.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 22 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

<u>COUNT II</u>

24.    As described in Paragraph 16, in multiple instances, Defendant failed to disclose to consumers, upon request, all information maintained in their consumer report files.

25.    By and through the acts and practices described in Paragraph 16, Defendant has

Exhibit 1
Case ID: 160900543

violated section 609(a)(1) of the FCRA, 15 U.S.C. § 1681g(a)(1).

26.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 25 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT III

27.    As described in Paragraph 17, in multiple instances, Defendant failed to conduct reinvestigations of the completeness or accuracy of information contained within a consumer's file upon receipt of a notice of dispute from the consumer.

28.    By and through the acts and practices described in Paragraph 17, Defendant has violated section 611(a)(1)(A) of the FCRA, 15 U.S.C. § 1681i(a)(1)(A).

29.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 28 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT IV

30.    As described in Paragraph 18, in multiple instances, Defendant closed dispute reinvestigations without providing written notice of the results of the reinvestigations to affected consumers.

31.    By and through the acts and practices described in Paragraph 18, Defendant has violated section 611(a)(6) of the FCRA, 15 U.S.C. § 1681i(a)(6).

32.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 31 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT V

Page 8 of 11

Exhibit 1
Case ID: 160900543

33.     As described in Paragraph 20, in multiple instances, Defendant failed to provide written notice to consumers of the fact that it reported public record information to employers, at the time the information was reported.  Defendant also failed to maintain strict procedures to ensure that the public record information in the reports was complete and up to date.

34.     By and through the acts and practices described in Paragraph 20, Defendant has violated section 613(a)(1)-(2) of the FCRA, 15 U.S.C. § 1681k(a)(1)-(2).

35.     Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 34 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15  U.S.C. § 45(a).

<u>THIS COURT'S POWER TO GRANT RELIEF</u>

36.     Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation of the FCRA, which constitutes a pattern or practice.  Defendant's violations of the FCRA, as alleged in this Complaint, have been knowing and have constituted a pattern or practice of violations.  As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2861, as amended by the Debt Collection Improvements Act of 1996, Pub. L. 104-134, § 31001(s)(1), 110 Stat. 1321-373, the Court is authorized to award a penalty of not more than $2,500 per violation for violations occurring before February 10, 2009, and $3,500 per violation for violations occurring on or after that date.

37.     Each instance in which Defendant has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under

Case ID: 160900543

section 621 of the FCRA, 15 U.S.C. § 1681s.  Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

38.    Under section 621(a) of the FCRA, 15 U.S.C. § 1681(a), and section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting Defendant from violating the FTC Act and the FCRA.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Court, pursuant to 15 U.S.C. §§ 45(a), 53(b), 1681s, and 1691c, and pursuant to the Court's own equitable powers:

(1)    Enter judgment against Defendant and in favor of Plaintiff for each law violation alleged in this Complaint;

(2)    Enter an injunction against Defendant to prevent further violations of the FCRA and the FTC Act, as alleged herein;

(3)    Award Plaintiff monetary civil penalties from Defendant for each violation of the FCRA as alleged in this Complaint;

(4)    Order Defendant to pay the costs of this action; and

(5)    Award Plaintiff such additional relief as the Court may deem just and proper.

Case ID: 160900543

DATED:  August 8, 2012

**FOR THE UNITED STATES**
**OF AMERICA:**

STUART F. DELERY
Acting Assistant Attorney General
Civil Division
United States Department of Justice

MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director
Consumer Protection Branch

 s/ Alan J. Phelps
ALAN J. PHELPS
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
PO Box 386
Washington, D.C. 20044
Phone: 202-307-6154
Facsimile: 202-514-8742
E-mail: alan.phelps@usdoj.gov
DC Bar No.: 475938

**FOR THE FEDERAL TRADE**
**COMMISSION:**

MANEESHA MITHAL
Associate Director
Division of Privacy and Identity Protection

ROBERT SCHOSHINSKI
Assistant Director
Division of Privacy and Identity Protection

ANTHONY RODRIGUEZ
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
601 New Jersey Ave. NW
Mail Stop NJ-8100
Washington, D.C.
Phone: 202-326-2757
Facsimile: 202-326-3062

TIFFANY GEORGE
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
601 New Jersey Ave. NW
Mail Stop NJ-8100
Washington, D.C.
Phone: 202-326-3040
Facsimile: 202-326-3062

Case ID: 160900543

# EXHIBIT 1

Filed and Attested by the
Office of Judicial Records
08 SEP 2016 04:34 pm
M. BRYANT

Case ID: 160900543

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
|  ) | |
| Plaintiff,  ) | |
|  ) | Civil Action No. 12-1313 |
| v.  ) | |
|  ) | |
|  ) | |
| HIRERIGHT SOLUTIONS, INC.  ) | |
|  ) | |
| Defendant.  ) | |
|  ) | |

## COMPLAINT FOR CIVIL PENALTIES,
## PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its

Complaint, alleges:

1.      Plaintiff brings this action under sections 5(a), 13(b), and 16(a) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a); and section 621(a) of

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a), to obtain monetary civil

penalties, and injunctive or other relief from Defendant HireRight Solutions, Inc. for engaging in

violations of the FTC Act, 15 U.S.C. § 45(a), and the FCRA, 15 U.S.C. §§ 1681 – 1681x.

<u>JURISDICTION AND VENUE</u>

2.      This Court has subject matter jurisdiction over this matter under 28 U.S.C.

§§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(a), 53(b), 56(a), and 1681s.

Case ID: 160900543

3.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1395(a), and 15 U.S.C. § 53(b).

PLAINTIFF

4.    This action is brought by the United States of America on behalf of the Federal Trade Commission.  The Commission is an independent agency of the United States government given statutory authority and responsibility by, *inter alia*, the FTC Act, *as amended*, 15 U.S.C. §§ 41-58, and the FCRA, 15 U.S.C. §§ 1681-1681x.  The Commission is charged, *inter alia*, with enforcing section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce; and the FCRA, which imposes duties upon consumer reporting agencies.

DEFENDANT

5.    Defendant HireRight Solutions, Inc. ("HireRight Solutions" or "Defendant") is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.  Defendant transacts or has transacted business in this district.

THE FAIR CREDIT REPORTING ACT

6.    The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date.  The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003.

7.    Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some

Page 2 of 11

Case ID: 160900543

other governmental agency, irrespective of whether the person is engaged in commerce or meets

any other jurisdictional tests set forth by the FTC Act.

8.    HireRight Solutions, formerly known as USIS Commercial Services, Inc.

is now and has been a "consumer reporting agency," as defined in section 603(f) of the FCRA,

15 U.S.C. § 1681a(f).  That section defines a consumer reporting agency as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the practice of assembling or evaluating
> consumer credit information or other information on consumers for the purpose of
> furnishing consumer reports to third parties, and which uses any means or facility
> of interstate commerce for the purpose of preparing or furnishing consumer
> reports.

HireRight Solutions regularly sells in interstate commerce information on consumers that it

assembles for the purpose of furnishing consumer reports to third parties, as described further

below.

9.    The FCRA imposes several obligations on consumer reporting agencies,

including obligations to take reasonable steps to ensure the maximum possible accuracy of

consumer reports, to provide consumers with access to their reports, and to implement

procedures for consumers to dispute inaccurate information in their reports.  These obligations

are described in more detail below.

<u>DEFENDANT'S BUSINESS PRACTICES</u>

10.    HireRight Solutions provides background reports to thousands of

employers throughout the United States about prospective and current employees, in order to

assist the employers in making decisions about hiring and other employment-related issues

("background screening reports").  These reports contain public record information, including

criminal histories of individuals, from multiple sources.

Exhibit 1
Case ID: 160900543

11.    The background screening reports that HireRight Solutions provides to employers are "consumer reports" as defined in section 603(d) of the FCRA, 15 U.S.C. § 1681a(d).  That section defines a "consumer report" as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604.

HireRight Solutions' reports are communicated to third parties; bear on, among other things, consumers' general reputation and personal characteristics; and are used as a factor in determining eligibility for employment.

ACCURACY

12.    Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires all consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of consumer report information.

13.    In numerous instances, Defendant failed to follow reasonable procedures to assure maximum possible accuracy.  Among other things, Defendant:

(1)    failed to follow reasonable procedures to assure that the information contained in consumer reports it furnished reflected the current public record status of consumers' information, such as expungement of a criminal record;

(2)    failed to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in the same report; and

Page 4 of 11

(3)     failed to follow reasonable procedures to prevent the provision of

obviously erroneous consumer report information to employers, such as

purported information on a single consumer that included records of other

consumers with different names, dates of birth, or other identifiers that are

available in the public record.

14.     In multiple instances, these failures led to the reporting of inaccurate consumer

report information regarding prospective employees who were then denied employment or other

employment-related benefits.

ACCESS AND CORRECTION

15.     Under the FCRA, consumer reporting agencies must allow consumers to access

their own information and dispute any inaccurate information.  In relevant part, the process is as

follows:  First, consumer reporting agencies must, upon request, clearly and accurately disclose

to a consumer who requests his or her file all information in that file at the time of the request.

15 U.S.C. § 1681g(a).  Second, within thirty days of receiving a notice that a consumer disputes

the completeness or accuracy of information in his or her file, the consumer reporting agency

must conduct a reasonable reinvestigation to determine whether the disputed information is

inaccurate and record the current status of the disputed information, or delete the information

from the file.  15 U.S.C. § 1681i(a)(1)(A).  Third, the consumer reporting agency must provide

written notice to the consumer of the results of the reinvestigation not later than five business

days after its completion.  15 U.S.C. § 1681i(a)(6).  Defendant did not comply with one or more

of these requirements.

Page 5 of 11

Exhibit 1
Case ID: 160900543

16.    In numerous instances, Defendant either failed to provide consumers with information in their files or failed to do so upon request.  Their systems for fulfilling requests for reports resulted in either delays or the non-fulfillment of the requests.  For example, HireRight Solutions, Inc. experienced numerous backlogs for fulfilling consumers' requests because of inadequate staffing or technical problems.

17.    In numerous instances, Defendant did not conduct reinvestigations of disputed items in a consumer's file upon receipt of a notice of dispute from the consumer.  Defendant required consumers who wished to dispute information in consumer reports to have a copy of the report before Defendant would initiate a reinvestigation.  For consumers who did not have their consumer report, Defendant routinely instructed them to request a copy before Defendant would initiate a reinvestigation.  This practice often delayed the reinvestigation process and made it more difficult for consumers to initiate that process.

18.    In numerous instances, Defendant closed dispute reinvestigations without providing written notice of the results of the reinvestigations to affected consumers.

## SPECIAL OBLIGATIONS ON BACKGROUND SCREENERS WHO USE PUBLIC RECORD INFORMATION

19.    The FCRA contains special requirements for consumer reporting agencies that furnish consumer reports containing public record information for employment purposes, if that information is likely to have an adverse effect upon a consumer's ability to obtain employment.  These consumer reporting agencies must either (1) notify the consumer, at the time that such information is reported, of the fact that public record information is being reported, or (2) maintain "strict procedures" designed to ensure the reported public record information is complete and up to date.   15 U.S.C. § 1681k(a).

Page 6 of 11

Case ID: 160900543

20.    In numerous instances, Defendant neither (1) notified consumers, at the time the information was reported, that they reported public record information to employers, nor (2) maintained "strict procedures" to ensure that the information in the reports was complete and up to date.  They had a complex, multi-step process for notifying consumers that public record information was being reported.  This process was not initiated until the day that the report was electronically transmitted to the employer and typically took more than one day to complete.  As a result, the notices were not mailed to consumers at the time the information was reported to employers.  Moreover, as described in Paragraph 13, Defendant did not maintain "strict procedures" to ensure that reported public record information was complete and up to date.

<u>VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>

<u>COUNT I</u>

21.    As described in Paragraph 13, in multiple instances, Defendant failed to use reasonable procedures to assure maximum possible accuracy of consumer report information.

22.    By and through the acts and practices described in Paragraph 13, Defendant has violated section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

23.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 22 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

<u>COUNT II</u>

24.    As described in Paragraph 16, in multiple instances, Defendant failed to disclose to consumers, upon request, all information maintained in their consumer report files.

25.    By and through the acts and practices described in Paragraph 16, Defendant has

Exhibit 1
Case ID: 160900543

violated section 609(a)(1) of the FCRA, 15 U.S.C. § 1681g(a)(1).

26.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 25 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

27.    As described in Paragraph 17, in multiple instances, Defendant failed to conduct reinvestigations of the completeness or accuracy of information contained within a consumer's file upon receipt of a notice of dispute from the consumer.

28.    By and through the acts and practices described in Paragraph 17, Defendant has violated section 611(a)(1)(A) of the FCRA, 15 U.S.C. § 1681i(a)(1)(A).

29.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 28 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

30.    As described in Paragraph 18, in multiple instances, Defendant closed dispute reinvestigations without providing written notice of the results of the reinvestigations to affected consumers.

31.    By and through the acts and practices described in Paragraph 18, Defendant has violated section 611(a)(6) of the FCRA, 15 U.S.C. § 1681i(a)(6).

32.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 31 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT V

Page 8 of 11

Exhibit 1
Case ID: 160900543

33.    As described in Paragraph 20, in multiple instances, Defendant failed to provide written notice to consumers of the fact that it reported public record information to employers, at the time the information was reported.  Defendant also failed to maintain strict procedures to ensure that the public record information in the reports was complete and up to date.

34.    By and through the acts and practices described in Paragraph 20, Defendant has violated section 613(a)(1)-(2) of the FCRA, 15 U.S.C. § 1681k(a)(1)-(2).

35.    Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 34 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15  U.S.C. § 45(a).

<u>THIS COURT'S POWER TO GRANT RELIEF</u>

36.    Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation of the FCRA, which constitutes a pattern or practice.  Defendant's violations of the FCRA, as alleged in this Complaint, have been knowing and have constituted a pattern or practice of violations.  As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2861, as amended by the Debt Collection Improvements Act of 1996, Pub. L. 104-134, § 31001(s)(1), 110 Stat. 1321-373, the Court is authorized to award a penalty of not more than $2,500 per violation for violations occurring before February 10, 2009, and $3,500 per violation for violations occurring on or after that date.

37.    Each instance in which Defendant has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under

Case ID: 160900543

section 621 of the FCRA, 15 U.S.C. § 1681s.  Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

38.     Under section 621(a) of the FCRA, 15 U.S.C. § 1681(a), and section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting Defendant from violating the FTC Act and the FCRA.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Court, pursuant to 15 U.S.C. §§ 45(a), 53(b), 1681s, and 1691c, and pursuant to the Court's own equitable powers:

(1)     Enter judgment against Defendant and in favor of Plaintiff for each law violation alleged in this Complaint;

(2)     Enter an injunction against Defendant to prevent further violations of the FCRA and the FTC Act, as alleged herein;

(3)     Award Plaintiff monetary civil penalties from Defendant for each violation of the FCRA as alleged in this Complaint;

(4)     Order Defendant to pay the costs of this action; and

(5)     Award Plaintiff such additional relief as the Court may deem just and proper.

Case ID: 160900543

DATED:  August 8, 2012

**FOR THE UNITED STATES**
**OF AMERICA:**

STUART F. DELERY
Acting Assistant Attorney General
Civil Division
United States Department of Justice

MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director
Consumer Protection Branch

 s/ Alan J. Phelps
ALAN J. PHELPS
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
PO Box 386
Washington, D.C. 20044
Phone: 202-307-6154
Facsimile: 202-514-8742
E-mail: alan.phelps@usdoj.gov
DC Bar No.: 475938

**FOR THE FEDERAL TRADE**
**COMMISSION:**

MANEESHA MITHAL
Associate Director
Division of Privacy and Identity Protection

ROBERT SCHOSHINSKI
Assistant Director
Division of Privacy and Identity Protection

ANTHONY RODRIGUEZ
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
601 New Jersey Ave. NW
Mail Stop NJ-8100
Washington, D.C.
Phone: 202-326-2757
Facsimile: 202-326-3062

TIFFANY GEORGE
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
601 New Jersey Ave. NW
Mail Stop NJ-8100
Washington, D.C.
Phone: 202-326-3040
Facsimile: 202-326-3062

Case ID: 160900543

# EXHIBIT 2



*Filed and Attested by the
Office of Judicial Records
08 SEP 2016 04:34 pm
M. BRYANT*



PROTECTING AMERICA'S CONSUMERS

MAIN MENU                                    SEARCH

# Employment Background Screening Company to Pay $2.6 Million Penalty for Multiple Violations of the Fair Credit Reporting Act

## FTC Charges HireRight Solutions Incorrectly Listed Criminal Convictions on Reports of Some Consumers

FOR RELEASE

August 8, 2012

TAGS: Finance | Finance | Bureau of Consumer Protection | Consumer Protection | Privacy and Security | Credit Reporting

An employment background screening company that provides consumer reports to companies nationwide will pay $2.6 million to settle Federal Trade Commission charges that it violated the Fair Credit Reporting Act by failing to use reasonable procedures to assure the maximum possible accuracy of information it provided, failing to give consumers copies of their reports, and failing to reinvestigate consumer disputes, as required by law.

The case against HireRight Solutions, Inc. represents the first time the FTC has charged an employment background screening firm with violating the FCRA, and is the second-largest civil penalty that the FTC has obtained under the Act. Only the 2006 $10 million civil penalty against consumer data broker ChoicePoint, Inc. was larger. The Department of Justice filed the complaint and proposed order against HireRight Solutions on the FTC's behalf. Under the settlement, the company also is barred from continuing its alleged illegal practices.

In its capacity as a consumer reporting agency, HireRight Solutions, provides background reports that contain information about prospective and current employees to help thousands of employers make decisions about hiring and other employment-related issues. Under the FCRA, the company's reports qualify as "consumer reports." They contain public-record information, including the individuals' criminal history.

The FTC alleges that in many cases, when it provided consumer reports to employers, HireRight Solutions failed to take reasonable steps to ensure that the information in the reports was current and reflected updates, such as the expungement of criminal records. Because of this, the FTC charged, employers sometimes received information that incorrectly listed criminal convictions on individuals' records.

Exhibit 2
Page 1 of 6


Case ID: 160900543

In addition, according to the FTC's complaint, HireRight Solutions failed to follow reasonable procedures to prevent the same criminal offense information from being included in a consumer report multiple times, failed to follow reasonable procedures to prevent obviously inaccurate consumer report information from being provided to employers, and in numerous cases even included the records of the wrong person. The FTC alleged that these failures led to consumers being denied employment or other employment-related benefits.

Under the FCRA, consumer reporting agencies must allow consumers to access their own information and dispute any inaccuracies. To do this, the consumer reporting agency must clearly and adequately disclose information in their file to a consumer who requests it. Next, within 30 days of being notified that a consumer wants to dispute the information in his or her report, the consumer reporting agency must conduct a reasonable investigation to determine whether the information is inaccurate, record the status of the information, or delete it from the file. Finally, the consumer reporting agency must notify consumers in writing of the results of this reinvestigation of their file within five days of when it's completed.

In numerous instances, HireRight Solutions failed to comply with these FCRA requirements, the FTC alleges. This includes failing to conduct investigations of disputed items in a consumer's file after being notified of a dispute, requiring consumers who wanted to dispute information in their file to have a copy of the report before the company would start a reinvestigation, and telling consumers who did not have a copy of their report to request one before they would reinvestigate, delaying the dispute process and making it more difficult. In addition, according to the FTC, HireRight Solutions closed complaint investigations without providing written notice of the results to consumers, as required.

Finally, the complaint alleges that HireRight Solutions failed to provide consumers with written notification that it had reported public record information about them to employers when it was being reported, as the FCRA requires.

In addition to the $2.6 million civil penalty, the settlement prohibits HireRight Solutions from:

> failing to maintain reasonable procedures to ensure that its consumer report information is as accurate as possible;
>
> failing to provide consumers with information in their files in a timely manner;
>
> requiring consumers to obtain a copy of their report before the company will conduct a dispute reinvestigation;
>
> failing to provide consumers with the results of a dispute reinvestigation; and
>
> failing to comply with the requirements for consumer reporting agencies that use public record information.

**Consumer Education**

The FTC has a variety of resources available for consumers seeking information about employment background checks. They included a business blog post, "Where HireRight Solutions Went Wrong," the consumer education publications, "What to Know When You Look for a Job" and "Employment Background Checks and Credit Reports," and a new video, "What to Know When Looking for a Job."

The Commission vote to authorize the staff to refer the complaint to the Department of Justice, and to approve the proposed consent decree, was 5-0. The DOJ filed the complaint and proposed consent decree on behalf of the Commission in U.S. District Court for the District of Columbia on August 8, 2012. The proposed consent decree is subject to court approval.

Exhibit 2
Page 2 of 6

Case ID: 160900543

**NOTE:** The Commission authorizes the filing of a complaint when it has "reason to believe" that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest. The complaint is not a finding or ruling that the defendant has actually violated the law. This consent judgment is for settlement purposes only and does not constitute an admission by the defendant of a law violation. Consent judgments have the force of law when signed by the District Court judge.

The Federal Trade Commission works for consumers to prevent fraudulent, deceptive, and unfair business practices and to provide information to help spot, stop, and avoid them. To file a complaint in English or Spanish, visit the FTC's online Complaint Assistant or call 1-877-FTC-HELP (1-877-382-4357). The FTC enters complaints into Consumer Sentinel, a secure, online database available to more than 2,000 civil and criminal law enforcement agencies in the U.S. and abroad. The FTC's website provides free information on a variety of consumer topics.  Like the FTC on Facebook, follow us on Twitter, and subscribe to press releases for the latest FTC news and resources.

(FTC File No. 102-3130)

## CONTACT INFORMATION

MEDIA CONTACT:
Mitchell J. Katz
*Office of Public Affairs*
202-326-2161

STAFF CONTACT:
Anthony Rodriguez
*Bureau of Consumer Protection*
202-326-3-2757

Tiffany George
*Bureau of Consumer Protection*
202-326-3040



In English

En Español

## Related Cases

HireRight Solutions, Inc.

Exhibit 2
 Case ID: 160900543

## For Consumers

Employment Background Checks and Credit Reports

Credit Reports & Scoring

What to Know When You Look for a Job

## For Businesses

Using Consumer Reports:  What Employers Need to Know

Disposing of Consumer Report Information? New Rule Tells How

Where HireRight Solutions Went Wrong

## Media Resources

Our Media Resources library provides one-stop collections of materials on numerous issues in which the FTC
has been actively engaged. These pages are especially useful for members of the media.

Contact
Stay Connected
Privacy Policy
FTC en español

**ABOUT THE FTC**

What We Do

Our History

Commissioners

Bureaus & Offices

Biographies

Budgets

Performance

Office of Inspector General

FOIA

Careers at the FTC

**NEWS & EVENTS**

Press Releases

Media Resources

Exhibit 2
Page 4 of 6

Case ID: 160900543

Events Calendar

Speeches

Audio/Video

Social Media

Blogs

**ENFORCEMENT**

Cases and Proceedings

Premerger Notification Program

Merger Review

Anticompetitive Practices

Rules

Statutes

Consumer Sentinel Network

**POLICY**

Advocacy

Advisory Opinions

Federal Register Notices

Reports

Testimony

Public Comments

International

**TIPS & ADVICE**

For Consumers

Business Center

Competition Guidance

**I WOULD LIKE TO...**

Submit a Consumer Complaint to the FTC

File a Comment

Get a Free Copy of My Credit Report

List a Number on the National Do Not Call Registry

Report An Antitrust Violation

**SITE INFORMATION**

Exhibit 2
Page 5 of 6
Case ID: 160900543

Privacy Policy

Website Policy

No FEAR Act

USA.gov

Accessibility

Digital Government Strategy

Open Government

**FEDERAL TRADE COMMISSION**

Headquarters:
600 Pennsylvania Avenue, NW
Washington, DC 20580
Contact Us



Exhibit 2
Case ID: 160900543
Page 6 of 6

# EXHIBIT 3



Filed and Attested by the
Office of Judicial Records
08 SEP 2016 04:34 pm
M. BRYANT

Case ID: 160900543



Ready to get star

# A World of Information at your Fingertips

## The Intelligent Solution for Businesses and Consumers

Founded before the turn of the century, backgroundchecks.com is a founding member of the National Association of Professional Background Screeners (NAPBS®) and cofounder of the Expungement Clearinghouse. We serve thousands of customers nationwide, from small businesses to Fortune 100 companies, by providing innovative and comprehensive screening services.

Headquartered in Dallas, Texas, with an Eastern Operations Center in Chapin, South Carolina, backgroundchecks.com is home to the #1 online criminal conviction databases in the industry*.

With a database of over 550 million criminal records and more than 13 million photos, backgroundchecks.com has an extensive collection of public record sources, delivering reports to both consumers and businesses in an intuitive, user-friendly format.

Case ID: 160900543

Learn more about background checks.com the company

## For Businesses

- With our comprehensive network of researchers, online applications, and system-to-system interfaces, you will have a screening services company that's easy to work with, thorough and fast.

- Our easy-to-use web ordering dashboards makes online managing of screening programs effortless.

- We pride ourselves on our US-based customer service team. If you need additional assistance, we're always ready to deliver personalized service by phone or email.

- We'll never offshore customer service, and never send your data overseas for ANY of our US based service offerings.

- From small businesses to corporate accounts - we've got the information and services you need after initial screening, including employee background criminal monitoring.

If you want to start right now, we offer discounted a background check starter packages for small businesses.

## For Consumers

backgroundchecks.com gives consumers a fast, safe, and easy way to find out what employers might find if they search for their name. Whether you are interested in criminal or driving records about yourself, we'll supply the knowledge you require to keep you informed about your own records and what others might find out about you.

- Our easy-to-use Internet interface makes ordering instant background checks effortless

- Protect your own identity. We'll help you discover what others can find out about you.

- If you need additional assistance, we're always ready to deliver personalized service by phone or email.

- Explore sample criminal and driving record reports in our support section.

*Based on a comparison of the number of sources of conviction data for online criminal conviction databases that make their source list publicly available.

Case ID: 160900543