**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GEORGE BOSKIE, | |
| Plaintiff, | |
| v. | No. 2:16-cv-05413-ER |
| BACKGROUNDCHECKS.COM (in its own name and trading as e-backgroundchecks.com), | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO TRANSFER TO THE
<u>NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)</u>**

Defendant e-BackgroundChecks.com, Inc., d/b/a Backgroundchecks.com ("BGC"), respectfully submits this brief in support of its Motion to Transfer to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Because the bulk of both the private and public interest factors that control the transfer analysis weigh in favor of transfer, the Court should grant BGC's motion.

First, the private interest factors favor transfer. The Northern District of Texas is more convenient for the parties and witnesses. Nearly all of the testimony in this case will come from BGC employees who live and work within the Northern District of Texas. BGC is incorporated in Texas, has its principal place of business in the Northern District of Texas, and maintains the documents and information at issue in this case at its Dallas headquarters. Furthermore, this case concerns only BGC's alleged willful conduct, an inquiry that courts in this Circuit (and elsewhere) have found time and again is centered around the defendant consumer reporting agency's actions; in this case, those actions occurred (if at all) in the Northern District of Texas, where BGC manages the processes for its consumer reports. Nothing underlying the claims

29457161

against BGC, aside from the incidental residence of Plaintiff, has any connection to Pennsylvania.  Additionally, because Plaintiff brings this case as a putative *nationwide* class action, his choice of venue is entitled to minimal deference.

Second, the relevant public interest factors also favor transfer (or are neutral).  This case turns purely on questions of federal law—the Fair Credit Reporting Act ("FCRA")—which a court in the Northern District of Texas is presumptively as able to apply as this Court. Furthermore, the relative administrative difficulty resulting from court congestion is a neutral factor when comparing statistics between the original and proposed venue.  Transfer to the Northern District of Texas will not impede the expeditious resolution of this case.  *See* Fed. R. Civ. P. 1 (noting that the Rules should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").  Moreover, BGC's location within the Northern District of Texas would also facilitate the discovery process and allow for efficiencies at trial because of the close proximity of effectively all germane witnesses and evidence.

Recognizing these exact considerations in indistinguishable circumstances, courts in this District and elsewhere in this Circuit have repeatedly transferred putative class actions arising under the FCRA to the defendant consumer reporting agency's ("CRA") home district, just as BGC seeks through its motion.[1]  Like the cases that came before it, this action presents a

---

[1] *E.g.*, *Smith v. HireRight Sols., Inc.*, No. 09-CV-6007, 2010 U.S. Dist. LEXIS 55477 (E.D. Pa. June 7, 2010) (transferring nationwide class action to the Northern District of Oklahoma, the location of defendant CRA HireRight's headquarters); *Henderson v. HireRight Sols., Inc.*, No. 10-CV-459, 2010 U.S. Dist. LEXIS 56154 (E.D. Pa. June 7, 2010) (same); *Murphy v. Trans Union, LLC*, No. 12-CV-499, 2012 U.S. Dist. LEXIS 115610 (E.D. Pa. Aug. 15, 2012) (transferring nationwide class action to the Northern District of Georgia, the location of co-defendant Equifax's headquarters); *Bogollagama v. Equifax Info. Servs., LLC*, No. 09-CV-1201, 2009 U.S. Dist. LEXIS 110821, at *9 (E.D. Pa. Nov. 30, 2009) (same); *see also Klingensmith v. Paradies Shops*, No. 07-CV-322, 2007 U.S. Dist. LEXIS 51591 (W.D. Pa. July

2

situation where transfer to the Northern District of Texas would result in more efficient litigation without prejudicing Plaintiff.  The Court should grant BGC's motion.

## FACTUAL BACKGROUND

BGC is a Texas-based background check company with no offices or staff in Pennsylvania.  (*See* Declaration of Craig Kessler ("Kessler Decl.") ¶¶ 4, 12-13, 24, attached hereto as **Exhibit 1**).  According to the Complaint, Plaintiff resides in Pennsylvania and applied for some type of "employment" with Homeadvisor.  (*See* Compl. ¶¶ 18, 34.)  The Complaint does not specify the location or type of "employment" for which Plaintiff allegedly applied.  The cover letter attached to the Complaint at Exhibit 4 lists a Colorado address for Homeadvisor.  (Compl. Ex. 4 at p. 1.)  Plaintiff alleges that BGC included erroneous and unreportable information in his background check, which "put Plaintiff's employment prospects at risk and damaged his reputation," making him "appear less attractive to prospective employers."  (*See id.* ¶ 47.)

Plaintiff asserts class claims.  From those claims, he seeks class-wide statutory and punitive damages, as well as costs and attorney's fees.  (*See* Compl. Prayer for Relief).  Despite the alleged loss of his employment, Plaintiff does not seek actual damages, either for himself or the putative class members, nor does he assert any claims for negligence.  (*See id.*)  Plaintiff seeks to represent three nationwide classes, consisting of consumers on whom BGC issued a consumer report containing public records in the past five years where BGC allegedly (1) included entries where the material date is more than seven years prior to the date of the report (in violation of § 1681c(a)); (2) included more than one non-identical entry regarding the same

---

17, 2007) (transferring nationwide class action asserting claims under the Fair and Accurate Credit Transaction Act, an amendment to the FCRA, to the Northern District of Georgia, the location of the defendant's headquarters).

29457161

incident (in violation of § 1681e(b)); or (3) furnished a consumer report for employment

purposes, failed to include an "Offense Tracking Number" for entries regarding criminal public

records from Pennsylvania, and did not provide contemporaneous written notice of the report to

the consumer (in violation of § 1681k).  (*Id.* ¶¶ 51-53.)  Plaintiff does not propose to bring his

class claims on behalf of any state-specific subclasses (for example, only Pennsylvania

residents); instead, each is pled on behalf of consumers nationwide.  (*See generally id.*)

## <u>ARGUMENT AND CITATION TO AUTHORITY</u>

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to any other

district "where it might have been brought" if transfer is "for the convenience of parties and

witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a); *see also Connors v. UUU*

*Prods.*, No. 03-CV-6420, 2004 U.S. Dist. LEXIS 6417, at *6 (E.D. Pa. Mar. 5, 2004).  The

determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law.  *See*

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-78 (3d Cir. 1995) (federal law applies because

questions of venue are procedural, rather than substantive).

The § 1404(a) inquiry has two components.  First, both the original venue and the

requested venue must be proper.  *Id.* at 879.  Venue, in a case based on federal question

jurisdiction, is proper only in "(1) a jurisdiction where any defendant resides if all defendants

reside in the same State, (2) a judicial district in which a substantial part of the events or issues

giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant may be

found, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(b).

Second, the court must undertake a balancing test to decide whether the litigation would

"more conveniently proceed and the interests of justice be better served by a transfer to a

different forum," *Jumara*, 55 F.3d at 879, so as "'to prevent the waste of time, energy and money

4

and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *see also Liberi v. Taitz*, No. 2:09-CV-1898, 2010 U.S. Dist. LEXIS 54695 (E.D. Pa. June 3, 2010) (Robreno, J.) (granting transfer under balancing test to home district of each defendant and where the statements at issue were made in defamation case).

The Third Circuit has outlined a non-exhaustive list of pertinent public and private interest factors to be weighed in this balancing test. The private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Jumara*, 55 F.3d at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

Here, both components of the § 1404 inquiry are satisfied and the balancing test favors transfer to the Northern District of Texas.

## I.     Venue lies in the Northern District of Texas.

Venue is proper in both the original district (E.D. Pa.) and the proposed district (N.D. Tex.). Plaintiff commenced this action in the Court of Common Pleas for Philadelphia County, and BGC removed it to this Court. (*See* Dkt. No. 1). BGC does not dispute that venue is proper

29457161

in this District, and Plaintiff has not filed any motion to remand.  Thus, the relevant question under § 1404(a) is whether venue also lies in the Northern District of Texas, which depends on whether "the defendant is amenable to process in the other jurisdiction."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (internal quotation marks omitted).

BGC is amenable to process in the Northern District of Texas.  Venue can be laid in any district where the defendant resides, which for a corporation is any district where it is subject to personal jurisdiction.  28 U.S.C. § 1391.  For a corporation, personal jurisdiction can be laid either in the state in which it is incorporated or the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  BGC is both incorporated in Texas and has its principal place of business and nerve center in Dallas, Texas.  (*See* Kessler Decl. ¶¶ 4, 10-15.); *see Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (holding that a corporation is subject to personal jurisdiction where it has its "nerve center").  BGC is thus subject to personal jurisdiction in Texas and venue is proper in the Northern District of Texas.

**II.      The convenience of the parties and witnesses and the interests of justice favor transfer.**

**A.      The private interests implicated by plaintiff's nationwide class action favor transfer.**

The private interest factors favor transfer to the Northern District of Texas.  These factors include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records.  *Jumara*, 55 F.3d at 879.

> **1.**     **Plaintiff's choice of forum is entitled to considerably less deference in this putative nationwide class action.**

While, "[t]ypically, a plaintiff's choice of venue is entitled to deference and should not be lightly disturbed," *Klingensmith v. Paradies Shops*, No. 2:07-CV-322, 2007 U.S. Dist. LEXIS 51591, at *6 (W.D. Pa. July 17, 2007) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)), "[t]he United States Supreme Court has held that a plaintiff's choice of forum should be accorded less deference in class action suits since all members of the class could conceivably bring suit in his or her home forum." *Howell v. Shaw Indus.*, No. 93-CV-2068, 1993 U.S. Dist. LEXIS 13784, at *10 (E.D. Pa. Oct. 1, 1993) (citing *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, . . . all of whom could with equal show of right go into their many home courts, *the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened*.") (emphasis added)).

Numerous courts in this district have applied the same lesser deference to a plaintiff's choice of forum in a class action. *See, e.g., Gen. Refractories Co. v. Wash. Mills Electro Minerals Corp.*, No. 94-CV-6332, 1995 U.S. Dist. LEXIS 8351 (E.D. Pa. Jun. 16, 1995) (noting that a class action plaintiff's choice of forum should not be a controlling factor); *In re All Terrain Vehicles Litig.*, Nos. 88-CV-237 *et al*., 1989 U.S. Dist. LEXIS 1843 (E.D. Pa. Feb. 23, 1989) (giving more weight to convenience of the parties and witnesses and the location of documentary evidence in a nationwide class action); *Donnelly v. Klosters Rederi A/S*, 515 F. Supp. 5, 6 (E.D. Pa. 1981) (transfer warranted in a class action despite plaintiff's choice of forum); *Impervious Paint Indus., Ltd. v. Ashland Oil, Inc*., 444 F. Supp. 465, 467-68 (E.D. Pa. 1978) (noting that a class action plaintiff's choice of forum deserves less weight and transfer was necessary for the convenience of the parties and witnesses).

Although Plaintiff brought this action in Philadelphia, his choice of forum deserves little weight because he brings his FCRA claims on behalf of putative *nationwide* classes. The great weight of authority recognizes that Plaintiff surrenders the traditional deference given to his choice of forum in such circumstances. Accordingly, the first factor favors transfer to the Northern District of Texas.

### 2. BGC's choice of forum weighs in favor of transfer.

The second factor under the *Jumara* analysis is the defendant's choice of forum. In a traditional individual action, a defendant's forum choice is "entitled to considerably less weight than [the p]laintiff's . . . ." *EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc*., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003). As with the first factor, however, this normal presumption does not hold true in a nationwide class action.

Here, BGC moves for transfer to the Northern District of Texas, where it is incorporated, headquartered, and maintains witnesses and documents. Given the reduced deference due to Plaintiff's choice of forum and the corresponding increased deference owed to BGC's choice of forum, this second factor readily weighs in favor of transfer. *See Smith*, 2010 U.S. Dist. LEXIS 55477, at *13 ("Nevertheless, Defendant's preference for an Oklahoma forum weighs in favor of transfer."). Moreover, where there is no co-defendant opposing transfer to the proposed forum, the moving defendant's choice of forum is entitled to deference. *See Murphy v. Trans Union, LLC*, No. 2:12-CV-499, 2012 U.S. Dist. LEXIS 115610, at *16 (E.D. Pa. Aug. 15, 2012).

### 3. The putative class claims arose in the Northern District of Texas.

Plaintiff's class claims arose in the Northern District of Texas, causing the third private factor to weigh in favor of transfer. Courts have repeatedly held that FCRA claims like those pled here arise in the district where the defendant CRA conducts its business. In *Bogollagama v.*

8

*Equifax Info. Servs., LLC*, No. 2:09-CV-1201, 2009 U.S. Dist. LEXIS 110821, at *9 (E.D. Pa. Nov. 30, 2009), for example, the court granted the defendant CRA's motion to transfer to the Northern District of Georgia because the operative facts in the case arose in the district where the credit reports central to the dispute were compiled and issued by the CRA.  The court in *Klingensmith*, 2007 U.S. Dist. LEXIS 51591, at *8, noted that in an FCRA class action that the "focus of this case" will be the defendant's conduct.  Similarly, in *Barela v. Experian Info. Sols., Inc.*, No. 04-CV-5144, 2005 U.S. Dist. LEXIS 19105, at *10 (N.D. Ill. Apr. 4, 2005), the court granted transfer after considering that "the relevant events and the effects thereof" indicated that the defendant's principle place of business was the appropriate forum.  This case compels the same conclusion.

Courts have also adopted this same reasoning in class actions beyond the FCRA context where the focus of the dispute is, like in this case, on the defendant's corporate conduct and policies.  *See Ayling v. Travelers Prop. Cas. Corp.*, No. 2:99-CV-3243, 1999 U.S. Dist. LEXIS 16716, at *16 (E.D. Pa. Oct. 27, 1999) ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred."); *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-CV-60045, 2002 U.S. Dist. LEXIS 14952 at *7-8 (S.D. Fla. Aug. 13, 2002) (noting that because the plaintiffs alleged that a company-wide policy caused damages to the class, "[a]ny wrongdoing on behalf of [the defendant] would have occurred at its principal place of business," thereby favoring transfer).

BGC maintains its principal place of business in Dallas, Texas, which is within the Northern District of Texas.  (Kessler Decl. ¶¶ 10-15.)  The events giving rise to the putative class claims occurred at BGC's headquarters in Dallas.  (*Id.* ¶ 12.)  Specifically, Plaintiff's background

9

report was prepared by BGC using processes designed and managed in Dallas.  (*Id.* ¶ 10.)  These processes, applied to ensure the maximum possible accuracy of BGC's consumer reports, were developed and implemented in Dallas.  (*Id.* ¶ 11.)  BGC's personnel and information related to client relations, sales, product management and data acquisition are located in Dallas.  (*Id.* ¶ 13.)  Fulfillment of customer requests for background reports for employment screening purposes are managed by personnel and computer systems in Dallas.  (*Id.* ¶ 14.)  The relevant actions or inactions of BGC, and the alleged failures of its policies and procedures, occurred (if at all) in Dallas, not Pennsylvania.  *Id.*  The Complaint makes no allegations to the contrary.

Moreover, in an FCRA class action such as this, where the plaintiff seeks only statutory damages, the primary issue is whether the defendant acted *willfully*, and the actions underlying that question all occur at the defendant's office, where its policies and procedures are formulated and effectuated.  *Bogollagama*, 2009 U.S. Dist. LEXIS 110821, at *9.  Because the relevant events underlying Plaintiff's Complaint occurred in Texas, the third private interest factor weighs in favor of transfer.

### 4.    The convenience of the parties and witnesses weighs heavily in favor of transfer

The fourth private interest factor—convenience of the parties and witnesses—favors transfer because nearly all relevant witnesses reside in the Northern District of Texas.  Witness convenience "is a particularly significant factor in a court's decision whether to transfer."  *Coppola v. Ferrellgas*, 250 F.R.D. 195, 198 (E.D. Pa. 2008).  This litigation will focus on BGC's corporate decisions and conduct because, as noted above, Plaintiff alleges only that BGC willfully violated the FCRA.  *See Klingensmith*, 2007 U.S. Dist. LEXIS 51591, at *8-9 (granting transfer because allegations of willful violations of the FCRA focus on the defendant's conduct).

29457161

The witnesses knowledgeable about BGC's policies, practices, and procedures—*i.e.*, the relevant questions for the willfulness inquiry—are its employees located in Dallas, Texas. (Kessler Decl. ¶¶ 12-14, 17, 21.)  Within the context of the putative nationwide classes defined in the Complaint, the concentration of party witnesses in the proposed district is entitled to more weight than the Plaintiff's mere residence in Philadelphia.  Furthermore, the burdens of travel distance, expense, and disruption of work and home schedules are especially significant here: Philadelphia is over 1,400 miles from Dallas, meaning that BGC faces the specter of eventually sending numerous employees halfway across the country for trial.  *See In re Volkswagon AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) (noting that "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"); *Ward v. Family Dollar Stores, Inc*., No. 7:06-CV-1060, 2006 U.S. Dist. LEXIS 96846 (N.D. Ala. Sept. 29, 2006) (reasoning that transfer to the District where the employer's headquarters was located "would save a considerable amount of resources regarding travel for key corporate witnesses, the transportation of documents and other evidence, and the avoidance of disruption of work and home schedules of the witnesses"); *see also McCraw v. GlaxoSmithKline*, No. 2:12-CV-2119, 2014 U.S. Dist. LEXIS 6912, at *14 (E.D. Pa. Jan. 17, 2014) (Robreno, J.) (transferring products liability action to the Southern District of Texas in part because fact witnesses reside there).

This analysis is exemplified in *Mitchell v. First N. Credit Union*, No. 1:07-CV-1891, 2007 U.S. Dist. LEXIS 74921 (N.D. Ill. Oct. 4, 2007), where the defendant moved to transfer to its home state of Arizona.  In granting the motion, the court noted that the defendant maintained its headquarters in Arizona, where its employees lived and where it kept corporate records.  *Id.* at

\*10.  Importantly, the court noted that litigating in the defendant's home district would require witnesses to travel "approximately 9 miles" from work to the courthouse.  *Id.* (citing http://www.mapquest.com).  The Northern District of Texas is equally convenient here: the courthouse is only 10.5 miles from BGC's office.  *See* http://maps.google.com (last visited October 26, 2016).

Here, just as this Court concluded in *Mitchell*, trial in the Eastern District of Pennsylvania would subject BGC's witnesses to "the inconvenience of constant travel to and from their home state, to a foreign jurisdiction."  *Mitchell*, 2007 U.S. Dist. LEXIS 74921, at \*10.  BGC witnesses with knowledge pertinent to Plaintiff's claims who reside within the Northern District of Texas include the following individuals:

- Craig Kessler, BGC's Chief Executive Officer, who has relevant information regarding BGC's operations, the production of consumer reports, and BGC's policies and procedures;

- Allison Sestak, BGC's Vice-President of Sales, who has relevant information regarding BGC's relationship with Homeadvisor;

- Employees in BGC's sales department;

- Employees in BGC's client relations department; and

- Employees in BGC's data acquisition department.

(Kessler Decl. ¶¶ 1, 5, 13.)

On the other hand, only a single witness—Plaintiff—resides in this District.  The cost of Plaintiff travelling perhaps once to Texas to testify at trial will be dramatically less than the costs BGC would bear in making its numerous witnesses and evidence available in this District.

29457161

In fact, Plaintiff's claims under §§ 1681e(b) and 1681k are the exact kind of claims that were at issue in *Smith v. HireRight Solutions, Inc.* Regarding the relative importance of the testimony of HireRight's witnesses and Plaintiff, the *Smith* court stated:

> The Complaint alleges a violation of two provisions of the FCRA: 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681k. To establish a case of willful noncompliance with § 1681e(b), a plaintiff must prove: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum accuracy; (3) injury to the consumer; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996). Further, the plaintiff must prove that the defendants "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997) (quoting *Philbin*, 101 F.3d at 970). Under the § 1681k claim, Plaintiff must prove that Defendant, in furnishing a report containing adverse information of public record, failed to either notify the consumer contemporaneously with the transmission of the report or "maintain strict procedures" designed to ensure that the report is complete and up to date. 15 U.S.C. § 1681k(a). ***Notably, none of the elements of either of these claims requires Plaintiff's active participation or testimony.*** In fact, as Defendant points out, Plaintiff seeks only statutory damages and not individual damages about which he need testify. (Compl. ¶ 43.); see *Klingensmith*, 2007 U.S. Dist. LEXIS 51591, 2007 WL 2071677, at *2 (noting that although the named plaintiffs in a class action under the FCRA expressed a preference for litigating in Pennsylvania, there was "no indication that their role [would] be anything more than nominal in nature. . . . ***The focus of the litigation will be on [the defendant's] actions, not on any class members' actions.***").

*Smith*, 2010 U.S. Dist. LEXIS 55477, at *21-23 (emphasis added). The same principles apply to Plaintiff's claims in Count I under § 1681c(a) regarding obsolete criminal records. These claims rely on documentary evidence, not any personal testimony of Plaintiff. None of Plaintiff's three claims "requires Plaintiff's active participation or testimony." *Id.* at *22. Moreover, Plaintiff's request only for statutory and punitive damages, not actual damages, means that the focus will be on BGC's conduct rather than on specific consequences to Plaintiff, *Smith*, 2010 U.S. Dist. LEXIS 55477, at *22, the relative importance of Plaintiff's personal testimony.

Accordingly, the fourth and fifth private interest factors weigh in favor of transfer.

13

5.     **The location of books and records supports transfer to the Northern District of Texas.**

The final private factor, the location of books and records, also favors transfer.  BGC's headquarters in Dallas, Texas, houses nearly all of the information BGC maintains related to the production of consumer reports like that produced about Plaintiff.  (Kessler Decl. ¶¶ 15-16, 20.)  BGC houses the information from which BGC generates consumer reports on servers in Dallas, with a redundancy in South Carolina.  (Kessler Decl. ¶¶ 18-21.)[2]

By way of example, the following documents were created by Texas and are maintained in Texas:

- Documents relating to the consumer report regarding Plaintiff;

- Documents and information reflecting BGC's procedures to comply with the FCRA as they relate to the allegations in this case;

- Documents and information reflecting BGC's systems and how it prepares consumer reports; and

- Documents reflecting how a BGC customer orders a consumer report and the information required during the ordering process.

(Kessler Decl. ¶¶ 10-11, 15-16.)

The location of the majority of key documents in Dallas favors transfer to the Northern District of Texas, even if this factor is not entitled to especially great weight.  *Klingensmith*,

---

[2] In recent years, courts have recognized the relative portability of documents in light of technological advances.  *See Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) ("[T]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis.").  However, courts still recognize the modest benefit of conducting the litigation as close to the location of documents as possible.  *See Klingensmith,* 2007 U.S. Dist. LEXIS 51591, at *10-11 (noting "this factor, while not accorded much weight, weighs in favor of transfer" where the defendant maintained copies in the proposed forum of the purchase receipts at issue).

14

2007 U.S. Dist. LEXIS 51591 at *10-11 (granting the defendant's motion to transfer the proposed class action); *Levin, Fishbein, Sedran & Berman v. Jameson*, No. 2:09-CV-3936, 2009 U.S. Dist. LEXIS 116807, at *12 (E.D. Pa. Dec. 14, 2009) (Robreno, J.) (transferring action to district where books and records were located and where defendants reside); *KAB Enter. Co. v. Ursich Elec. Prods.*, No. 2:06-CV-4361, 2007 U.S. Dist. LEXIS 27524 at * 8 (E.D. Pa. Apr. 12, 2007) (granting motion to transfer in part because the defendant's principal place of business was in the transferee district); *Ayling*, 1999 U.S. Dist. LEXIS 16716 at *16-17 (granting the defendant's motion to transfer the proposed class action); *Moore's Federal Practice* § 111.13[1][h] (favoring transfer based in part on "the ease of conducting merits-related discovery in a location that is near the pertinent documents").

\* \* \*

Because each of the private factors favors transfer, the Court should grant BGC's motion.

### B.     The public interest factors weigh in favor of transfer.

In addition to considering private factors, the § 1404(a) transfer analysis also requires an analysis of public interest factors.  In *Jumara*, the Third Circuit noted six such factors:  (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two venues resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the possible venues; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Jumara*, 55 F.3d at 879-80.

Because "both forums are federal district courts," the first factor, enforceability of the judgment, "has little relevance, because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other."

17 James Wm. Moore et al., *Moore's Federal Practice* § 111.13[1][i] (3d ed. 2016); *see also E'Cal Corp. v. Office Max, Inc.*, No. 2:01-CV-3281, 2001 U.S. Dist. LEXIS 15868, at *13 (E.D. Pa. Sep. 6, 2001) ("[T]his factor is less consequential because there is little significant difference in enforcing a judgment in one federal forum than in another.") (citing *Moore's*).

Public interest factors (4), (5), and (6) are not applicable here as Plaintiff's FCRA claims arise under federal question jurisdiction and the Complaint alleges putative nationwide classes. *See Smith*, 2010 U.S. Dist. LEXIS 55477, at *29. Thus, the important public interest factors in this action are: (1) practical considerations that could make the trial easy, expeditious, or inexpensive; and (2) the relative administrative difficulty in the two venues resulting from court congestion.

### 1.    Trial will be easier and less expensive in the Northern District of Texas.

Trial will be easier and less expensive in the proposed forum because it is the most convenient venue for all of BGC's witnesses and the location of the documents related to Plaintiff's background screening report and BGC's conduct that allegedly willfully violated the FCRA. As noted above BGC's witnesses live and work in or near the Northern District of Texas, which is over 1,400 miles away from the Eastern District of Pennsylvania. These witnesses would be required to travel this considerable distance to appear in the Eastern District of Pennsylvania. *See Smith*, 2010 U.S. Dist. LEXIS 55477, at *30 (noting that "all HireRight employees would be required to travel such distances [from Oklahoma] should the case remain" in the Eastern District of Pennsylvania). In contrast, conducting any hearings or trial in Dallas will only require transporting witnesses and documents across town.

The court in *Smith* further noted that when an action has been in the original venue for only a relatively short period of time, "a transfer will not significantly disrupt the litigation or

result in a waste of judicial resources." *Id.* (quoting *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006)).  Here, this case is in its infancy—there has been no litigation to give this Court any meaningful stake in the litigation.

        **2.**        **The comparative level of court congestion is a neutral factor.**

The relative administrative difficulty resulting from court congestion is a neutral factor when comparing relevant statistics between the original and proposed venue.  According to the Judicial Caseload Profile compiled by the Administrative Office of the U.S. Courts, in the twelve month period ending on June 30, 2016—the most recent annual report for which statistics are available—the Eastern District of Pennsylvania received 9,527 case filings compared to only 7,920 for the Northern District of Texas.  Judicial Caseload Profiles, attached hereto as **Exhibit 2**.  This is seventeen percent more in the original forum than in the proposed forum.  Courts, however, also consider the number of filings per judge.  *See, e.g., Smith,* 2010 U.S. Dist. LEXIS 55477, at *31.  The Eastern District of Pennsylvania had 433 filings per judge during the relevant time period, and the Northern District of Texas had 660.  *Id.*  In light of these diverging statistics regarding case load in the two fora, this factor is neutral regarding transfer.

\* \* \*

On balance, the applicable public interest considerations either favor transfer or are neutral.

## CONCLUSION

This case has no meaningful connection to the Eastern District of Pennsylvania.  As courts in this District have recognized time and again in putative FCRA class actions, the most appropriate venue is the defendant's home venue.  For the reasons stated above, and because the

private and public factors weigh in favor of transfer, the Court should grant BGC's Motion and transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted this 18th day of November 2016.

/s/ John G. Papianou
John G. Papianou (Bar No. 88149)

**MONTGOMERY McCRACKEN**
   **WALKER & RHOADS LLP**
123 South Broad Street
Avenue of the Arts
Philadelphia, PA  19109
Tel:  (215) 772-7389
Fax:  (215) 731-3636

Cindy D. Hanson (GA Bar No. 323920)
*Pro hac vice* pending
Ross D. Andre (GA Bar No. 280210)
*Pro hac vice* pending

**TROUTMAN SANDERS LLP**
600 Peachtree St. NE, Suite 5200
Atlanta, GA  30308
Tel:  (404) 885-3000
Fax:  (404) 885-3900

18

29457161

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of November, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record.

/s/ John G. Papianou
John G. Papianou (Bar No. 88149)

19

29457161